36422. LOGUE *v.* THE STATE.

DECIDED DECEMBER 5, 1956.

*Conger & Conger,* for plaintiff in error.

*Maston O'Neal, Solicitor-General,* contra.

GARDNER, P. J. This case was first assigned to the writer and an opinion was prepared affirming the judgment of the trial court denying the motion for new trial. A dissent developed to the opinion as first prepared and the case was thereupon submitted to the whole court in accordance with Code (Ann. Supp.) § 24-3501. The court instructed the writer to prepare this opinion reversing the trial court.

Code (Ann. Supp.) § 74-9902 provides as follows: "If any father or mother shall wilfully and voluntarily abandon his or her child, leaving it in a dependent condition, he or she, as the case may be, shall be guilty of a misdemeanor; Provided, however, if any father or mother shall wilfully and voluntarily abandon his or her child leaving it in a dependent condition, and shall leave this State, he or she, as the case may be, shall be guilty of a felony and shall, upon conviction, be imprisoned in the penitentiary for not less than one nor more than three years, which shall be reducible to a misdemeanor. The wife and husband shall be competent witnesses, in such cases to testify for or against the other. A child thus abandoned by the father or mother shall be considered to be in a dependent condition when the father or mother charged with the offense does not furnish sufficient food and clothing for the needs of the child. The offense of abandonment shall be and is hereby declared to be a continuing offense."

It has been consistently held that the primary obligation to support the child until it reaches majority remains, as it did at common law, upon the father, and the abandonment statutes have been applied against a father even though the parties are separated and the custody is in the mother. *Ozburn* v. *State,* 79 *Ga. App.* 823 (54 S. E. 2d 376). The act of 1946 (Code, Ann. Supp., § 74-9902; Ga. L. 1946, p. 173) created the offense of abandonment as to a mother. The Code defines abandonment to mean the wilful and voluntary act of abandoning the child, *leaving it in a dependent condition* and then defines dependent condition to mean "when the father or mother charged with the

offense does not furnish sufficient food and clothing for the needs of the child." Dependency must accordingly be considered only in relation to actual physical needs of the child, as for food and clothing, which, in this case, had always been provided by the father so far as appears from the evidence here, there being nothing to suggest that she was or ever had been a wage earner or that anyone other than the father had ever provided these things or was in position to provide them, or had the primary obligation of providing them. The mother did leave the children (whether because of the beatings admittedly administered to her by the husband or because of another man was a disputed issue) but she left them in the same economic condition in which they had been all along, and the mere act of leaving under these conditions does not constitute the penal offense of abandonment as defined by the Code.

What is stated above is the majority opinion. In my opinion the court did not err in denying the motion for a new trial. Under a proper construction of the statute, I think a mother who wilfully and voluntarily abandons her minor children may be prosecuted criminally even though the father had, prior to that time, treated her cruelly personally, but had furnished all the necessities of life.

The evidence shows that the defendant was a married woman living with her husband and two boys, 11 and 14 years old, respectively, in Decatur County. The husband of the defendant was a convict guard whose work required him to leave home before daylight and return after dark. As a result he got all of his meals at a public works camp. The father paid for all the food for the family. The mother bought, prepared and served it and performed other maternal functions. On October 26, the husband left home to go to his work and the boys went to school. The mother left while they were away and did not return that night. The next morning the father went to work and the children went to school. Before going to school the boys locked the house and nailed the windows. At noon the boys went to a store to get something to eat and then returned to their home. Their mother was there, having broken the lock. She was getting her wearing apparel together. She told the children she was not coming back. Neither the father nor the children saw her again

for over a year. She went to Florida with a man with whom she had been keeping company. After they had been gone a year they came back to Decatur County and the defendant said that they were married. She told Mr. Logue (the father of the children), that she had divorced him and was married to the man with whom she left. At the time she made this statement she was intoxicated at a drive-in restaurant.

The defendant in her statement admitted that she left Logue because he was mean to her and beat her on several occasions, and that they could not get along; that on the day before she left she got word of her father's illness (her father lived in an adjoining county) and went there and spent the night with her father; that there was no telephone available to notify her family of her whereabouts. She stated also that she got a divorce, naming the Fifth District Circuit Court, Marion County, Florida, as the forum where she secured the divorce, and that she later married the man who took her away from Decatur County. She said that Logue had told her that if she took the children away with her that she would get in trouble with the law.

Logue testified that he had not been served with any papers nor had he been served with any divorce suit; that he had not heard from the defendant directly or indirectly during her absence and that so far as he knew he was still married to her. He testified further that the defendant was drunk on several occasions and that on one occasion when she came home drunk "and cussed him, I whipped her. I only whipped her with my hand and did not whip her much."

Counsel for the defendant contend that since abandonment of a minor child was not a criminal offense under the common law that the statutes making abandonment a criminal offense are to be strictly construed since they are in derogation of the common law and also because they are penal in their nature. This is correct. Counsel for the defendant contend also that this statute applies to a mother only when for some lawful reason she has the obligation to furnish food, clothing, medical, health and educational needs for the children, and should not be construed to mean that, where she does not do so, this statute of abandonment in this State does apply.

Counsel for the defendant gives a historical review of our

statutes of abandonment from the beginning, leading up to and including Georgia Laws 1952, pp. 173, 174. I will not discuss this excellent treatise here for the reason that I think the statute of our State on the subject is full and complete within itself. It will be observed that the statute provides that when a mother and/or father wilfully and voluntarily abandon their minor children they may be prosecuted. The statute does not provide that this applies to only one of the parents who wilfully and voluntarily abandons a child, leaving such child in a dependent condition. The writer thinks that the very gist of the statute is that a child from its birth until majority deserves and needs love and affection and moral direction as much as it needs food and clothing and other necessaries for its physical well-being. The General Assembly evidently meant to penalize fathers for failing to do whatever is expected of them, and to punish mothers for failing to do what is expected of them, provided, of course, that such failure is wilful and voluntary. A child could not survive if its wants were not provided for in the sense of paying for necessities of life, but I think it is also true that just paying for such is not enough, under the provisions of the statute, if the furnishing did not go farther than that.

The writer is quite sure that the General Assembly in passing the act now under consideration had in mind that this was an important question to be dealt with and no doubt the General Assembly was motivated by the coined phrases "juvenile delinquent" and "parental delinquency." It might appear in some view that since the mother claimed that she was afraid to remain with her husband there was nothing else for her to do other than leave him and the children. In such a situation as the defendant depicts in this case, she had ample remedies at law to proceed against the father without abandoning her children. Under the circumstances of the mother's abandonment of the children for the reasons she gave it must be understood that she had ample civil and criminal legal rights to force her husband to desist from whipping her. She could have brought divorce proceedings and asked for custody of her children and attorney's fees involved in enforcing her rights against her husband. In no view of this case under the statute now under consideration did the law leave her helpless in regard to the rights of a mother which nature and this statute now under consideration imposed upon her.

782

The trial court erred in denying the motion for a new trial.
*Judgment reversed. Felton, C. J., Townsend, Carlisle, Quillian and Nichols, JJ., concur. Gardner, P. J., dissents.*